# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:14-CR-00024 |
| v. | ) | |
| | ) | |
| BRIANNE MARCELIN | ) | |

## DEFENDANT BRIANNE MARCELIN'S
## SENTENCING MEMORANDUM

The defendant, Brianne Marcelin, through her undersigned counsel, hereby submits this Sentencing Memorandum for the Court's consideration. This Memorandum requests a departure and/or variance[1] from the Guidelines sentence in this case. The Guidelines sentence is significantly greater than necessary to comply with the purpose of 18 U.S.C. § 3553. The defendant, therefore, requests that this Court fashion an individualized sentence that gives appropriate weight and

---

[1] A sentence imposed outside the Guidelines based upon Section 5 of the Guidelines is a "departure" or a "Guideline departure." A sentence outside the Guidelines based upon the 18 U.S.C. §3553(a) factors is a "variance" or a "non-Guideline departure." Whether the Court utilizes an application of the 3553 factors or Sections 5K2.0(2)(B) (unidentified circumstances) and 5K2.0(3) (departures based upon circumstances present to a degree not adequately taken into consideration) of the Sentencing Guidelines, a sentence below the Guidelines is appropriate. *See United States v. Livesay*, 525 F.3d 1081,1090 (11th Cir. 2008) (explaining that under *Gall v. United States,* 128 S. Ct. 586 (2007) and *Rita v. United States*, 127 S. Ct. 586 (2007), the district court can fashion a reasonable sentence outside of the Guidelines range though adherence to an advisory Guideline departure or on other factors, particularly the 3553(a) factors, so long as it provides adequate justification for the deviation); *see also United States v. Evans*, 526 F.3d 155 (4th Cir. 2008). Of course, the factors that can be used to justify a post-*Booker* variance are less limited than Guidelines departures. *United States v. Hampton*, 441 F.3d 284, 288 n.2 (4th Cir. 2006).

effect to all of the Section 3553 factors.  The defense contends that a sentence combining minimal incarceration, home confinement and supervised release adequately meets these goals.

## I.   THE SENTENCING FRAMEWORK.

"[I]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 128 S. Ct. 586, 598 (2007).  Since the Sentencing Guidelines became advisory in *Booker*, the "range of choice dictated by the facts of the case [has been] significantly broadened."  *Id.* at 602 (internal citations and quotations omitted). The Supreme Court has specifically rejected a rule that would require "extraordinary circumstances" to justify a sentence outside the Guidelines range. *Id.* at 595.

After *Rita* and *Gall*, a district court begins all sentencing procedures by correctly calculating the applicable Guidelines range.  While the Guidelines are a "starting point" and an "initial benchmark," they are not the only consideration, and a sentencing court may not presume that the Guidelines sentence is reasonable. *Id.* at 596-97.  After giving both sides the opportunity to argue for whatever sentence they believe to be appropriate, the sentencing court should then consider

all of the Section 3553(a) factors to determine whether they support the requested sentence, making "an individualized assessment based on the facts presented." *Id.* at 597.

The Eleventh Circuit and other appellate courts have acknowledged that a sentence in the guideline range can produce an unreasonable result. *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006), ("There are, however, many instances where the guideline range will not yield a reasonable sentence"); *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc) (same); *United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006) (same).   As the First Circuit explained in *Jimenez-Beltre*:

> [T]he guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases. Some of the guidelines in particular cases were not reflections of existing practice but were deliberate deviations or turned tendencies into absolutes. Others have been affected by directions from Congress. Booker's remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness.

440 F.3d at 518 (citations omitted) (emphasis added).

Finally, after calculation of the custody range, it is within the Court's discretion to sentence within that guideline or to impose a more lenient sentence than the applicable range, "provided the resulting sentence is reasonable in light of the § 3553(a) factors." *United States v. Shelton*, 400 F.3d 1325, 1334

(11th Cir. 2005); *See also Gall*, 128 S. Ct. at 595.

When the sentencing court determines that a sentence outside the Guidelines is warranted, it then must consider the extent of the deviation and ensure that the justification is sufficient to support the variance. *Id.* Finally, once the appropriate sentence is chosen, the sentencing court must adequately explain it. *Id.*

## II. ANALYSIS OF SECTION 3553(A)'S FACTORS SUPPORTS A DOWNWARD VARIANCE FROM THE GUIDELINES SENTENCE.

### A. Nature and Circumstances of the Offense; History and Characteristics of Brianne Marcelin

#### 1. The Offense.

Ms. Marcelin was the fourth of four defendants indicted in relation to a prostitution operation in Atlanta. Ms. Marcelin pleaded guilty to conspiracy to engage of sex trafficking of juveniles.

At a time when Ms. Marcelin was estranged from her family and was financially vulnerable, Mr. Jernigan, the main defendant who acted as the pimp of the prostitutes involved, offered to pay Ms. Marcelin's rent and provide a small amount of other financial support for Ms. Marcelin for her to occasionally drive the women to dates and to handle some household duties at the apartment where these women lived. Ms. Marcelin was not always aware that some of the girls at issue were underage; indeed, some of them were not minors. Additionally, Ms. Marcelin served in a support role for these women. While Ms. Marcelin deeply

regrets and takes full responsibility for playing any role in these events, she never recruited, restrained or harmed any of these girls.  Instead, she made sure that they had food, clothes and were otherwise cared for.

## 2. <u>Brianne Marcelin.</u>

<u>Family History and Relevant Circumstances</u>.  Ms. Marcelin was born in New York, New York, and her parents divorced when she was approximately two years old.  Her father stayed in New York while Ms. Marcelin moved with her mother to Philadelphia, PA and then to Miami, FL.  Ms. Marcelin's mother was plagued with mental illness/depression throughout Ms. Marcelin's life, attempting suicide and hospitalizing herself for depression on several occasions.

<u>Support</u>.  Despite knowledge of this isolated error in judgment that Ms. Marcelin committed in this case, she nonetheless has the strong support of her family.  Those who know Ms. Marcelin for anytime know what strong values and dedicated work ethic she has, and they know that this whole incident is completely out of character for her.  Some of her family will speak on her behalf at sentencing.

<u>Education and Work History</u>.  Since her arrest, Ms. Marcelin has maintained steady employment and been compliant with her other conditions of bond.  She also graduated from high school in Florida and attended some college.

<u>Characteristics Relating to This Incident</u>.  While fully acknowledging her responsibility for her participation in these events, Ms. Marcelin's role was limited.

5

Prior to this incident, Ms. Marcelin had **no** criminal history.  She has fully cooperated with the government such that they are moving for a 5K downward departure on her behalf.  She has pleaded guilty, allowing the Government to avoid the time and expense of a trial, and she cooperated with the Government prior to entering her plea.  She has demonstrated genuine remorse for all of the pain and embarrassment she has caused to the victims in this case, to herself and to her family.

3.     **Variance Based Upon These Characteristics.**

Several courts have upheld significant downward variances from the Guidelines sentencing range based on various combinations of these characteristics.  In *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007), for example, the Fourth Circuit upheld a 42-month sentence in child pornography case where the applicable Guidelines range was 78 to 97 months because, *inter alia*, the defendant showed deep remorse, he was an otherwise model citizen and good father, and he had already lost his job and teaching certificate as a result of his conviction.   *See also United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (affirming probationary sentence where applicable Guidelines range was 18 to 24 months based upon defendant's otherwise honorable and lawful life, his lack of a prior criminal history, his good standing in the community, that he was a devoted husband and father, that he regularly attended church, that he was remorseful, and

that he was unlikely to offend again); *United States v. Prisel*, 316 Fed. Appx. 377, 385 (6th Cir. 2008) (affirming variance from Guidelines sentence of 27 to 33 months imprisonment to a sentence of one day in prison followed by 18 months home confinement based upon the defendant's lack of a prior criminal record, the low risk of recidivism, the defendant's age (44), and his family ties and responsibilities).

### B.   Protecting the Public, Promoting Respect for the Law, Providing Just Punishment and Deterrence.

There is no dispute that the charges at issue here are serious crimes. All of the other factors in this section of the statute, however, favor a non-Guidelines sentence in this case.

Ms. Marcelin poses no risk of recidivism. Her lack of *any* criminal history and her otherwise lawful and honorable life, combined with the deep emotional and financial pain and public shame that this investigation and guilty plea has brought to Ms. Marcelin and to her family, are more than sufficient to ensure that she not re-offend. In *United States v. Oldani*, 2009 WL 1770116 (S.D.W. Va. June 16, 2009), the court thoroughly outlined the reduced risk of recidivism posed by first offenders:

> While his placement within criminal history category "I" gives Mr. Oldani a sizeable benefit based on his lack of criminal history, category "I" can be broken down into further classifications with widely varying rates of recidivism: (a) offenders with no prior arrests or convictions; (b) offenders

with prior arrests but no prior convictions; (c) offenders with prior convictions that do not count towards criminal history points; (d) offenders with one criminal history point. *See* U.S. Sentencing Commission, Recidivism and the "First Offender", May 2004 *available at* http://www.ussc.gov/publicat/recidivism_firstoffender.pdf. *Based on empirical research, the commission found that a defendant with no prior arrests nor criminal history has only a 6.8 percent chance of recidivism. Id.* This was the lowest rate of recidivism of any group in the study and sharply lower than the rate of those defendants with prior arrests but no convictions (17.2 percent) or defendants with one criminal history point (22.6 percent). (Defendants with prior convictions that did not count towards a criminal history points had an *8.8 percent rate of recidivism*).

*United States v. Oldani*, 2009 WL 1770116 (S.D.W. Va. June 16, 2009) (emphasis added). Ms. Marcelin falls into this lowest rate group with absolutely no criminal history, and this factor should be considered strongly in her favor.

Additionally, Ms. Marcelin's participation in the conduct at issue here was very limited in both scope and time. And, as noted in the PSR at ¶ 39, when she attempted to extract herself from the situation, Defendant Jernigan threatened her with physical violence. And she witnessed Defendant Williamson assaulting a couple of the girls involved in this matter, so she knew that the threats of violence were realistic.

## C.  Kinds of Sentences Available

Given that the Sentencing Guidelines are no longer mandatory, the Court has numerous sentencing options available to it, and under Section 3553(a), it is to impose a sentence that is sufficient, but *not greater than necessary*. In this case,

the Court can impose a combination of minimal incarceration, house arrest, and probation that will serve the purposes of Section 3553(a).

### D.   Applicable Advisory Guidelines Range

The PSR currently lists the sentencing range in this case as a level 31, Criminal History Category I, which yields a range of 108 to 135 months.   This range – which translates to 9 to 11.25 years imprisonment – is much higher than needed to accomplish the goals of 18 U.S.C. § 3553(a).  Given Ms. Marcelin's lack of any prior criminal history, her limited involvement in the conspiracy, the aberrant nature of this conduct compared to Ms. Marcelin's regular conduct, and her relative youth, a significantly lower sentence is more than sufficient to serve all of the goals of Section 3553 while still providing Ms. Marcelin with an opportunity to come back from this isolated mistake and live a meaningful and productive life.

### E.  Need to Avoid Unwarranted Disparities In Sentence.

Sentencing courts in the post-*Booker-Rita-Gall* era have exhibited a willingness to grant variances in appropriate cases.  *See, e.g., Pauley*, 511 F.3d at 475 (4th Cir. 2007) (affirming 42 month sentence in child pornography case where applicable Guidelines range was 78 to 97 months); *United States v. Thurston*, 544 F.3d 22 (1st Cir. 2008) (affirming three-month sentence and supervised release where applicable Guidelines sentence was 60 months); *Howe*, 543 F.3d at 141 (3rd Cir. 2008) (affirming probationary sentence where applicable Guidelines range

was 18 to 24 months); *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (affirming probationary sentence where applicable Guidelines range was 27 to 33 months).   Based upon all of the facts and circumstances of this defendant, this crime and this case, a significant downward variance is appropriate in this case.

### F.   Need for Restitution

Ms. Marcelin fully intends to make full and prompt restitution once she is able to pay her debt to society and then rejoin the workforce.   Her ability to have the financial resources to pay restitution, therefore, would be significantly enhanced by a no- or low-incarceration sentence.

### III.   THE COURT SHOULD DECLINE TO IMPOSE THE SEX OFFENDER REGISTRATION REQUIREMENT ON MS. MARCELIN.

Imposition of the sex offender registration requirement on defendants convicted of conspiracy to engage in sex trafficking of a minor is not mandatory in all cases.   Indeed, according to the Eleventh Circuit, whether the district court properly imposes this requirement is a matter of judicial discretion, reviewable on an abuse of discretion standard.   *See, e.g., United States v. Veal*, 322 F.3d 1275 (11th Cir. 2003).

In another case similar to this one in this district, Judge Orinda Evans declined to impose the sex offender registration requirement on a defendant who, like Ms. Marcelin, had pleaded guilty to this conspiracy charge.   *See United States*

*v. Waters*, 1:13-CR-187-01-ODE, Doc. 159 [a true and correct copy of the JNC is attached as **Exhibit A**].  For all the reasons set forth in this memo and those brought out at the sentencing hearing, this Court should exercise its discretion and decline to impose the sex offender registration requirements in this case.

## IV.    CONCLUSION.

Section 3553(a) directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of [§3553]."  Applying the factors to this specific defendant and case, the Guidelines sentencing range is greater than necessary to fulfill the statute's purposes.

Ms. Marcelin's conduct in this instance was a very limited interlude of an otherwise honorable personal history.  Her conduct, which is the subject of the guilty plea, is atypical of her character.  Despite her circumstances, she still has the support of her family.

Considering all of the pertinent factors, the sentence necessary to fulfill the goals and objectives of sentencing is minimal incarceration, home confinement and probation.

Respectfully submitted this 4th day of April, 2016.

/s/**_Holly A. Pierson_**
Holly A. Pierson
Georgia Bar No. 579655

Pierson Law LLC
3127 Maple Drive NE
Atlanta, Georgia  30305
(404) 353-2316
hpierson@piersonlawllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2016, I electronically filed a copy of the

foregoing Defendant Brianne Marcelin Sentencing Memorandum with the Clerk of

the Court using the CM/ECF system which will automatically send e-mail

notification of such filing to the following:

> Skye Davis
> 600 U.S. Courthouse
> 75 Spring Street, S.W.
> Atlanta, GA  30303
> Skye.Davis@usdoj.gov
>
>
> ***/s/Holly A. Pierson*****____**
> Holly A. Pierson
> Georgia Bar No. 579655

Pierson Law LLC
3127 Maple Drive NE
Atlanta, Georgia  30305
(404) 353-2316
hpierson@piersonlawllc.com


FILED IN CHAMBERS
U.S.D.C. - Atlanta

OCT - 2 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**

-vs-                                          Case No.   **1:13-CR-187-02-ODE**

**TIERRA MICHELLE WATERS**

**Defendant's Attorney**
**David H. Jones**

_____

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant pleaded guilty to Count(s) One of the Indictment.

Accordingly, the defendant is adjudged guilty of such count(s) which involves the following offense:

| Title & Section | Nature of Offense | Count No. |
|---|---|---|
| 18 USC § 1594(a) and (c) | Conspiracy to Engage in Sex Trafficking of a Minor | One |

The defendant is sentenced as provided in pages 2 through 5 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Count(s) All remaining counts dismissed on the motion of the United States.

It is ordered that the defendant shall pay the special assessment of **$100.00** which shall be due immediately.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States attorney for this district within thirty days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.      XXX-XX-9158          Date of Imposition of Sentence: September 29, 2014
Defendant's Date of Birth:       1983
Defendant's Mailing Address:
Lovejoy, GA

Signed this the _____ day of October, 2014.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE



1:13-CR-187-02-ODE : TIERRA MICHELLE WATERS                          Page 2 of  5

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **NINETY-SIX (96) MONTHS**.

The Court recommends that the Bureau of Prisons designate the  facility in Tallahassee, Florida as place of service of her sentence.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on  _____  to  _____

at  _____, with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By:  _____

Deputy U. S. Marshal

1:13-CR-187-02-ODE : TIERRA MICHELLE WATERS                                    Page 3 of 5

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **FIVE (5) YEARS**.

While on supervised release, the defendant shall not commit another federal, state or local crime and shall not illegally possess a controlled substance.  The defendant shall comply with the standard and special conditions that have been adopted by this court (set forth below).  If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release.  The defendant shall comply with the following additional conditions:

The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

## SPECIAL CONDITIONS

Pursuant to 42 USC Section 14135a(d) and 10 USC Section 1565(d), which require mandatory DNA testing for Federal Offenders convicted of felony offenses, the defendant shall cooperate in the DNA collection as directed by the probation officer.

The defendant shall not own, possess or have under her control a firearm, dangerous weapon, or other destructive device as defined in 18 USC § 921.

The defendant shall submit to a drug testing if requested to do so by the Probation Officer.

The defendant shall submit to a search of her person, property, residence and/or vehicle at the request of the U. S. Probation Officer.

The defendant shall make a full and complete disclosure of her finances and submit to an audit of his financial documents, at the request of the Probation Office.

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

The defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release at the monthly rate of $150.00.


1:13-CR-187-02-ODE : TIERRA MICHELLE WATERS                    Page 4 of 5

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime.  In addition:

1.  The defendant shall not leave the judicial district without the permission of the court or probation officer;

2.  The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3.  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4.  The defendant shall support his or her dependents and meet other family responsibilities;

5.  The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6.  The defendant shall notify the probation officer within 72 hours of any change in residence or employment;

7.  The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician, and shall submit to periodic urinalysis tests as directed by the probation officer to determine the use of any controlled substance;

8.  The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9.  The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11. The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;

12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.


1:13-CR-187-02-ODE : TIERRA MICHELLE WATERS                    Page 5 of  5

## RESTITUTION

The defendant shall make restitution jointly and severally with Steven Thompson to the following person(s) in the following amounts:

**Name of Payee**                          **Amount of Restitution**

C. R.                                      $3,000